UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIDA I., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, Commissioner of Social Security,[1] <br><br> Defendant. | Case No.: 3:19-cv-00476-AJB-RNB <br><br> **REPORT AND RECOMMENDATION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br> **(ECF Nos. 21, 22)** |

This Report and Recommendation is submitted to the Honorable Anthony G. Battaglia, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.

On March 12, 2019, plaintiff filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her applications for a period of disability and disability insurance benefits, and for Supplemental Security Income ("SSI"). The operative complaint is the First Amended Complaint filed by plaintiff on March 26, 2019. (*See* ECF No. 6.)

---

[1] Andrew Saul is hereby substituted as the defendant in this case per Fed. R. Civ. P. 25(d).

1

Now pending before the Court and ready for decision are the parties' cross-motions for summary judgment. For the reasons set forth herein, the Court **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED,** that the Commissioner's cross-motion for summary judgment be **DENIED**, and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings.

## PROCEDURAL BACKGROUND

On July 28, 2014, plaintiff filed applications for a period of disability and disability insurance benefits and for SSI, alleging disability commencing April 1, 2014. (Certified Administrative Record ["AR"]) 440-43, 444-52.) Her applications were denied initially and upon reconsideration. (AR 368-71, 375-79.)

On January 5, 2016, plaintiff requested a hearing before an administrative law judge ("ALJ"). (AR 381-82.) The hearing was held on October 31, 2017. Plaintiff appeared with counsel, and testimony was taken from her and a vocational expert ("VE"). (*See* AR 128-58.) The ALJ issued a decision on March 26, 2018, finding that plaintiff was not disabled for purposes of her benefits applications. (AR 10-21.)

Thereafter, on April 25, 2018, plaintiff requested review of the decision by the Appeals Council. (AR 436-39.) The ALJ's decision became the final decision of the Commissioner on January 22, 2019, when the Appeals Council denied plaintiff's request for review. (AR 1-6.) This timely civil action followed.

## SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ initially determined that plaintiff last met the insured status requirements of the Social Security Act on December 31, 2017. (AR 113.)

//
//
//

2

3:19-cv-00476-AJB-RNB

Now pending before the Court and ready for decision are the parties' cross-motions for summary judgment. For the reasons set forth herein, the Court **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED,** that the Commissioner's cross-motion for summary judgment be **DENIED**, and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings.

## PROCEDURAL BACKGROUND

On July 28, 2014, plaintiff filed applications for a period of disability and disability insurance benefits and for SSI, alleging disability commencing April 1, 2014. (Certified Administrative Record ["AR"]) 440-43, 444-52.) Her applications were denied initially and upon reconsideration. (AR 368-71, 375-79.)

On January 5, 2016, plaintiff requested a hearing before an administrative law judge ("ALJ"). (AR 381-82.) The hearing was held on October 31, 2017. Plaintiff appeared with counsel, and testimony was taken from her and a vocational expert ("VE"). (*See* AR 128-58.) The ALJ issued a decision on March 26, 2018, finding that plaintiff was not disabled for purposes of her benefits applications. (AR 10-21.)

Thereafter, on April 25, 2018, plaintiff requested review of the decision by the Appeals Council. (AR 436-39.) The ALJ's decision became the final decision of the Commissioner on January 22, 2019, when the Appeals Council denied plaintiff's request for review. (AR 1-6.) This timely civil action followed.

## SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ initially determined that plaintiff last met the insured status requirements of the Social Security Act on December 31, 2017. (AR 113.)

//
//
//

The ALJ proceeded to follow the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since April 1, 2014, the alleged onset date. (AR 113.)

At step two, the ALJ found that plaintiff had the following severe impairments: asthma; degenerative disc disease, status-post lumbar fusion surgery; and degenerative joint disease of the right shoulder, hands, and knees. (AR 113.) As part of his step two determination, the ALJ further found that plaintiff had other medically determinable physical impairments that were nonsevere because they "caused only minimal effects and did not impair [plaintiff's] ability to work. (*See id.*) In addition, the ALJ found that plaintiff had medically determinable mental impairments that, considered singly and in combination, were nonsevere because they did not "cause more than minimal limitation in [plaintiff's] ability to perform basic mental work activities." (*See* AR 113-15.)

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (AR 115-16.)

Next, the ALJ determined that, through the date last insured, plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b),

> "except she can perform postural activities occasionally, with the exception of no climbing of ladders, ropes or scaffolds. She can occasionally reach overhead and otherwise frequently reach, handle, and finger. The claimant must avoid concentrated exposure to extreme cold, lung irritants, and vibration and must avoid hazards." (AR 116.)

---

[2] Unless otherwise indicated, all references herein to the Commissioner's regulations are to the regulations in effect at the time of the ALJ's decision. Hereafter the Court will only be citing the regulations applicable to disability insurance benefits applications because the parallel SSI regulations are virtually identical.

For purposes of his step four determination, the ALJ found that plaintiff had past relevant work between 2001 and 2003 as a loan officer. The ALJ adduced and accepted the VE's testimony that a hypothetical person with plaintiff's vocational profile and RFC would be able to perform the requirements of the loan officer job,[3] as the job is generally performed in the economy. Based on the VE's testimony and the absence of any indication in the record that plaintiff performed the job at a different skill, exertional, or performance level than what was classified by the VE based on the DOT, the ALJ found that plaintiff was capable of performing her past relevant work as a loan officer, both as she performed it and as generally performed in the economy. (*See* AR 120-21.)

Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined in the Social Security Act, from April 1, 2014 through the date of his decision. (AR 121.)

## PLAINTIFF'S SOLE CLAIM OF ERROR

Plaintiff's sole claim of error is directed to the ALJ's finding at step four of the sequential evaluation process that plaintiff remained capable of performing her past relevant work as a loan officer.

The gravamen of plaintiff's claim of error is that the ALJ's vocational determination is not supported by substantial evidence because the loan officer job is a skilled job and the ALJ failed to properly account for plaintiff's nonsevere mental impairments in his RFC assessment and his hypotheticals to the VE, when making his determination of whether plaintiff remained capable of performing that skilled job.

*//*
*//*
*//*

---

[3] The Dictionary of Occupational Titles ("DOT") classification code for the loan officer job is 186.267-018.

4

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## DISCUSSION

Step two of the Commissioner's sequential evaluation process requires the ALJ to determine the medical severity of the claimant's medically determinable impairments. *See* 20 C.F.R. § 404.1520(a)(4)(ii). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." Under the Commissioner's regulations, an impairment is not severe "if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *See* 20 C.F.R. § 404.1522(a). Social Security Ruling ("SSR") 85-28 clarified that this means "an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities." *See also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding

appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. *See* 20 C.F.R. § 404.1522(b); *see also* SSR 85-28.

Under the Commissioner's regulations, to determine whether a claimant has a severe *mental* impairment at step two, an ALJ must follow a "special technique." *See* 20 C.F.R. § 404.1520a(a). This entails the following steps: determining whether the claimant has any medically determinable mental impairments; rating the degree of functional limitation resulting from the mental impairment(s) in four broad functional areas; determining the severity of the mental impairment(s); and then, if any of the mental impairments is severe, proceeding to step three of the sequential evaluation process. *See* 20 C.F.R. § 404.1520a(b)-(d).

The four broad functional areas are: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *See* 20 C.F.R. § 404.1520a(c)(3). In rating the degree of limitation in these areas, the following five-point scale is utilized: None, mild, moderate, marked, and extreme. *See* 20 C.F.R. § 404.1520a(c)(4). Under the Commissioner's regulations, if the degrees of limitation are rated as "none" or "mild," the impairment generally is considered not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." *See* 20 C.F.R. § 404.1520a(d)(1).

Here, the ALJ's decision reflects that he followed the "special technique." He found that plaintiff had medically determinable mental impairments of bipolar disorder, mood disorder, panic disorder, anxiety disorder, psychotic disorder, and a history of alcohol and polysubstance abuse. (*See* AR 113.) The ALJ then proceeded to rate the degree of functional limitation resulting from plaintiff's mental impairments in each of the four broad functional areas as "mild." (*See* AR 114-15.)

Because they caused no more than "mild" limitations in any of the four broad functional areas, the ALJ found that plaintiff's medically determinable mental impairments were nonsevere. (*See* AR 115.)

Plaintiff does not dispute that the ALJ's nonseverity finding with respect to her mental impairments is supported by the substantial evidence of record. Nor is plaintiff disputing whether plaintiff's nonsevere mental impairments had more than a minimal effect on her ability to perform basic mental work activities. Rather, as set forth above, the gravamen of plaintiff's sole claim of error is that the ALJ's vocational determination is not supported by substantial evidence because the loan officer job that the ALJ found plaintiff remained capable of performing is a skilled job and the ALJ failed to properly account for plaintiff's nonsevere mental impairments when making his determination of whether plaintiff remained capable of performing that skilled job.

DOT 186.267-018 describes the attributes of the loan officer job as follows:

> "Interviews applicants, and examines, evaluates, and authorizes or recommends approval of customer applications for lines or extension of lines of credit, commercial loans, real estate loans, consumer credit loans, or credit card accounts: Interviews applicant and requests specified information for loan application. Analyzes applicant financial status, credit, and property evaluation to determine feasibility of granting loan or submits application to CREDIT ANALYST (financial) 160.267-022 for verification and recommendation. Corresponds with or interviews applicant or creditors to resolve questions regarding application information. Approves loan within specified limits or refers loan to loan committee for approval. Ensures loan agreements are complete and accurate according to policy. May confer with UNDERWRITER, MORTGAGE LOAN (financial) 186.267-026 to aid in resolving mortgage application problems. May supervise loan personnel. May analyze potential loan markets to develop prospects for loans. May solicit and negotiate conventional or government secured loans on commission basis and be known as Mortgage Loan Originator (financial). May specialize by type of lending activity and be known as Commercial Account Officer (financial); International Banking Officer (financial); Mortgage-Loan Officer (financial; insurance)."

Further, DOT 186.267-018 describes loan officer as a sedentary job, requiring reasoning level 5 and SVP 7. Reasoning level 5 means the loan officer job requires the ability to "[a]pply principles of logical or scientific thinking to define problems, collect data, establish facts, and draw valid conclusions. Interpret an extensive variety of technical

7

instructions in mathematical or diagrammatic form. Deal with several abstract and concrete variables. *See id.* One of the functions of the loan officer job that the DOT characterizes as "significant" is "speaking-signaling." *See id.* The DOT defines "speaking-signaling" as "[t]alking with and/or signaling people to convey or exchange information. Includes giving assignments and/or directions to helpers or assistants." *See* DOT Appendix B. SVP 7 mean over two years of training and up to and including four years. *See* DOT Appendix C. The Commissioner considers jobs requiring an SVP between 5 and 9 to be skilled jobs. *See* POMS DI 25015.017(C)(6).

In the Court's view, the Commissioner's cross-motion is nonresponsive to the particular claim of error being raised by plaintiff. Nowhere in the cross-motion does the Commissioner address, let alone dispute, the skilled nature of the loan officer job. Moreover, the Commissioner repeatedly mischaracterizes what the ALJ's nonseverity finding meant. It did not mean that plaintiff's mental impairments "did not significantly impact her ability to work." (*See* ECF No. 22-1 at 4, 5, 6.) Rather, under the authorities cited above, the ALJ's nonseverity finding merely meant that plaintiff's mental impairments did not cause more than minimal limitation in her ability to perform basic mental work activities. That's precisely what the ALJ did find at step two of the sequential evaluation process. (*See* AR 113.) It does not follow that the ability to perform basic mental work activities equates to the ability to perform skilled work.

Under the Commissioner's regulations, an ALJ must consider the limiting effect of all impairments, including those that are nonsevere, in assessing a claimant's RFC. *See* 20 C.F.R. § 404.1545(a)(2). Thus, the mere fact that the ALJ's nonseverity finding here was supported by the substantial evidence of record is not dispositive of whether the ALJ needed to account for the mild mental limitations underlying the nonseverity finding in his RFC assessment and his hypotheticals to the VE. In *Hutton v. Astrue*, 491 F. App'x 850 (9th Cir. 2012), the ALJ determined at step two that the claimant's PTSD caused mild limitations in concentration, persistence or pace, but was nonsevere. *Hutton*, 491 F. App'x at 850. The ALJ later explicitly excluded consideration of the claimant's PTSD in making

his determination of the claimant's RFC because he found that the claimant lacked credibility. In holding that the ALJ had erred in failing to include the claimant's PTSD in his RFC assessment and his hypotheticals to the VE, the Ninth Circuit reasoned: "[W]hile the ALJ was free to reject Hutton's testimony as not credible, there was no reason for the ALJ to disregard his own finding that Hutton's nonsevere PTSD caused some 'mild' limitations in the areas of concentration, persistence, or pace." *Hutton*, 491 F. App'x at 851.

Numerous courts in this Circuit have followed *Hutton* and found reversible error where the ALJ failed to include mild mental limitations in the assessment of the claimant's RFC. *See, e.g., Carlson v. Berryhill*, 2019 WL 1116241, at *17-*18 (N.D. Cal. Mar. 10, 2019); *Barrera v. Berryhill*, 2018 WL 4216693, at *4-*5 (C.D. Cal. Sept. 5, 2018); *Gates v. Berryhill*, 2017 WL 2174401, at *2 (C.D. Cal. May 16, 2017); *Smith v. Colvin*, 2015 WL 9023486, at *8-*9 (N.D. Cal. Dec. 16, 2015); *Kramer v. Astrue*, 2013 WL 256790, at *2-3 (C.D. Cal. Jan. 22, 2013).

Here, the ALJ did purport to consider all of the evidence relating to plaintiff's mental impairments in connection with his determination of plaintiff's RFC. The ALJ asserted that his RFC assessment was "supported by the objective medical evidence and by the claimant's reported activities of daily living, both of which contradict her allegations." (*See* AR 118-20.)

However, the objective medical evidence with respect to plaintiff's mental impairments, to which the ALJ stated he was according "great weight," merely substantiated the ALJ's step two nonseverity finding. (*See* AR 119.) For example, in support of their nonseverity finding, the state agency psychological consultants had found that plaintiff had mild limitations in the first three of the four broad functional areas and no limitation in the fourth. (See AR 302-03, 317-18, 337-38, 359-60.)[4] Dr. Nicholson, the

---

[4] Under the Commissioner's regulations then in effect for evaluating the severity of mental impairments, the four broad functional areas were: activities of daily living; social

9

psychiatric consultative examiner, had opined *inter alia* that plaintiff was mildly limited in the ability to relate and interact with coworkers and the public; in the ability to maintain concentration and attention, persistence and pace; in the ability to accept instructions from supervisors; in the ability to maintain regular attendance in the work place and perform work activities on a consistent basis; and in the ability to perform work activities without special or additional supervision. (*See* AR 1043.) The ALJ never stated that he was rejecting the foregoing specific functional limitations to which Dr. Nicholson had opined. And, the ALJ never explained why he failed to include those specific mild functional limitations in his RFC assessment or in his hypotheticals to the VE, when the ALJ was seeking to ascertain whether plaintiff remained capable of performing her past skilled work as a loan officer.

Moreover, while Dr. Nicholson also had opined that plaintiff was able to do detailed and complex instructions, which is one of the characteristics of skilled work (*see* POMS DI 25015.017(C)(6)), Dr. Nicholson had not purported to render an opinion on whether plaintiff remained capable of performing her past skilled work as a loan officer, given the specific functional limitations to which he also had opined. Such an opinion was not within Dr. Nicholson's purview, but rather was within the purview of the VE. In the Court's view, the objective evidence of specific mild functional limitations here, which the ALJ never stated he was rejecting, is what distinguishes this case from cases in which courts have found *Hutton* to be inapplicable. *See*, *e.g.*, *Thompson v. Saul*, 2019 WL 3302471, at *7 (E.D. Cal. July 23, 2019); *George A. v. Berryhill*, 2019 WL 1875523, at *3-*5 (C.D. Cal. Apr. 24, 2019); *Lindsay v. Berryhill*, 2018 WL 3487167, at *6 (C.D. Cal. July 18, 2018); *Aranda v. Berryhill*, 2017 WL 3399999, at *5-*6 (C.D. Cal. Aug. 8, 2017).

The Court also notes that, with respect to plaintiff's activities of daily living, the ALJ merely concluded that plaintiff's admitted activities of daily living "suggest an ability to

---

functioning; concentration, persistence or pace; and episodes of decompensation. *See* 20 C.F.R. § 404.1520a(d)(1) (version effective June 13, 2011 to Jan. 16, 2017).

perform a range of light work and directly contradict the claimant's allegation that she can no longer maintain work activity." (AR 119.) This conclusion begs the question whether plaintiff's reported activities of daily living evidenced the ability to perform her past skilled work as a loan officer.

Since the ALJ did not include any functional limitations relating to plaintiff's mental impairments in any of his hypotheticals to the VE underlying his step four determination (*see* AR 151-52), the Court cannot determine how the VE would have testified had the specific mild functional limitations to which Dr. Nicholson had opined been included in the hypotheticals posed. The Court therefore finds that the ALJ's finding at step four of the sequential evaluation process that plaintiff remained capable of performing her past relevant work as a loan officer is not supported by substantial evidence.

## CONCLUSION AND RECOMMENDATION

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. *See, e.g.*, *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). Remand for further proceedings is warranted where additional administrative proceedings could remedy defects in the decision. *See, e.g.*, *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984); *Lewin*, 654 F.2d at 635. Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, *Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits to which the disabled plaintiff is entitled, *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985).

Here, plaintiff is not seeking a remand for the payment of benefits. Rather, plaintiff acknowledges that the proper remedy in the event of reversal is a remand for further administrative proceedings. (*See* ECF No. 21 at 11; ECF No. 23 at 4.)

1 | The Court therefore **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED,** and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

Any party having objections to the Court's proposed findings and recommendations shall serve and file specific written objections within 14 days after being served with a copy of this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2). The objections should be captioned "Objections to Report and Recommendation." A party may respond to the other party's objections within 14 days after being served with a copy of the objections. *See id.*

IT IS SO ORDERED.

Dated: January 28, 2020

_____
ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE